[Cite as *State v. Foster*, 2019-Ohio-3732.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

TYRONE B. FOSTER AKA TYRONE B. COLES,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 CO 0017**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2017-CR-278

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. John Gamble*, Columbiana County Prosecutor's Office, Columbiana County Courthouse, 105 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee and

*Atty. Desirae DiPiero*, Desirae DiPiero, LLC, 8256 East Market Street, Suite 111, Warren, Ohio 44484, for Defendant-Appellant.

Dated:
September 12, 2019

**Donofrio, J.**

{¶1} Defendant-appellant, Tyrone Foster a.k.a. Tyrone Coles, appeals his conviction in the Columbiana County Common Pleas Court for one count of trespass in a habitation when a person is present in violation of R.C. 2911.12(B), a fourth-degree felony, following a jury trial.

{¶2} On April 7, 2018, Breanna Reed was with her three children outside of her home at the Woodland Hills Apartments in East Liverpool, Ohio. At the same time, appellant was outside of Breanna's apartment building socializing with his relatives Nate Coles and Venetta Coles. Nate and Venetta are siblings and lived together next door to Breanna.

{¶3} While outside the building, appellant approached Breanna and began having a conversation with her. Appellant expressed a desire to see Breanna romantically. When Breanna declined, appellant returned to socialize with Nate and Venetta.

{¶4} Later that evening, Nate went to Breanna's apartment and asked Breanna to hold an iPad for him while he went to a store. Breanna agreed to take the iPad. When Nate returned for the iPad, appellant was with him. Nate asked Breanna if she would let them into her apartment so appellant could charge his phone. Breanna declined to allow Nate and appellant into her apartment and the two left. After Nate and appellant left, Breanna put her three children to bed, locked her doors, locked her windows, and went to bed herself.

{¶5} The next morning, April 8, 2018, Breanna was awoken by her one year-old baby. Breanna made her baby a bottle and went back to her room to lay down. After she laid down, she heard a noise. When Breanna looked up from her bed, she saw an intruder in her room and began to scream. The intruder had a startled look on his face, said nothing, and ran out of the front door. Breanna checked on her children, checked her home, and then called the police.

{¶6}     Officer Hedrick and Captain Flati from the East Liverpool Police Department reported to Breanna's apartment that morning after receiving a call from dispatch at about 7:30 a.m. Breanna provided Officer Hedrick and Captain Flati with a description of the intruder and informed them that her kitchen window had been opened. Officer Hedrick and Captain Flati then searched the area to find a person matching Breanna's description but did not find anyone. They told Breanna to not touch the window as a detective would be by later to take fingerprints. They then left the scene.

{¶7}     About one hour later, Breanna called the police again to report that the intruder was now next door in Nate and Venetta's apartment. Officer Hedrick and Captain Flati returned and talked to Breanna. Breanna told them that the intruder was next door in Nate and Venetta's apartment and she believed the intruder's name was Tyrone. Officer Hedrick and Captain Flati then went next door to Nate and Venetta's apartment. Jacob Coles answered the door and said no one else was in the apartment. Officer Hedrick and Captain Flati took Jacob's information and returned to Breanna's apartment next door to update her on the situation. Breanna informed them that the intruder was in fact in Nate and Venetta's apartment at that moment. Officer Hedrick and Captain Flati returned to Nate and Venetta's apartment and spoke to Jacob again. At this time, appellant announced his presence in the home. Officer Hedrick and Captain Flati took appellant into custody for violating the Woodland Hills Apartments' active criminal trespass list. In order to leave, Officer Hedrick and Captain Flati needed to walk past Breanna's apartment. Once they walked passed Breanna's apartment, Breanna identified appellant as the intruder in her bedroom that morning.

{¶8}     Appellant was then indicted on one count of trespass in a habitation when a person is present.

{¶9}     The matter proceeded to a jury trial. In addition to the above facts, plaintiff-appellee, the State of Ohio, presented evidence that four fingerprints from the outside of Breanna's kitchen window were able to be retrieved. The fingerprints were sent to the Bureau of Criminal Investigation and Identification (BCI/I) for analysis. Only three of the fingerprints were able to be analyzed and all three belonged to appellant.

{¶10}     The jury found appellant guilty of trespass in a habitation when a person is present. On May 7, 2018, the trial court sentenced appellant to 14 months of

Case No. 18 CO 0017

incarceration. Appellant timely filed his notice of appeal on May 23, 2018. Appellant now raises one assignment of error.

**{¶11}** Appellant's sole assignment of error states:

DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO CHALLENGE THE IDENTIFICATION OF APPELLANT AFTER THE UNDULY SUGGESTIVE AND UNRELIABLE ONE-MAN SHOW UP.

**{¶12}** Appellant argues that Breanna's pretrial identification of him as the intruder in her apartment was an unconstitutionally suggestive show-up identification and his counsel was ineffective for failing to file a motion to suppress her pretrial identification.

**{¶13}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, the appellant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 citing *Strickland.*

**{¶14}** Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶15}** Regarding the first prong of appellant's ineffective assistance of counsel claim, he argues that his trial counsel should have filed a motion to suppress what he argues was a suggestive one-man show-up identification. This court has previously held that the failure to file a motion to suppress does not constitute ineffective assistance of counsel per se. *State v. Spring*, 7th Dist. Jefferson No. 15 JE 0019, 2017-Ohio-768, ¶ 19 citing *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858. The appellant must prove that there was a basis to suppress the evidence in question. *Id.* quoting *Brown*.

**{¶16}** Appellant cites the Ohio Supreme Court's decision in *State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765 in support of the argument that suggestive identifications are inadmissible. "When a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." *Id.* at 534.

**{¶17}** Courts look to the totality of the circumstances to determine whether a confrontation has been so suggestive that "a very substantial likelihood of irreparable misidentification" exists. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Five factors are analyzed to determine whether a confrontation has been unduly suggestive: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Id.* at 199-200; *Mason v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 19.

**{¶18}** As for show-up identifications, they are typically described as "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup[.]" *State v. Broom*, 40 Ohio St.3d 277, 286, 533 N.E.2d 682 (1988) quoting *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

**{¶19}** But the evidence submitted at trial indicates that this is not a show-up identification as appellant suggests. Appellant was found in the apartment next door to Breanna's apartment. Officer Hedrick and Captain Flati testified that, once they arrested appellant, they had to walk past Breanna's apartment in order to leave. When they walked past Breanna's apartment, Breanna identified appellant as the intruder into her home.

**{¶20}** Additionally, Breanna was able to identify appellant as the intruder before Officer Hedrick and Captain Flati walked appellant past her apartment. Officer Hedrick testified that, when he was dispatched to return to Breanna's apartment, Breanna reported that the intruder was in Nate and Venetta's apartment.

**{¶21}** Moreover, there is no indication that had Breanna's pretrial identification been suppressed, the outcome of appellant's trial would have been different. In addition

to Breanna reporting that the intruder was in the apartment next door, she testified that she locked all of her windows and doors before she went to sleep on April 7, 2018. The next morning, after the intruder fled, Breanna noticed that the kitchen window by her front door was completely open.

**{¶22}** Detective Smith from the St. Clair Township Police Department arrived at Breanna's home and managed to lift four fingerprints from the window that was opened. The fingerprints were sent to the BCI/I for analysis. A report from the BCI/I indicated that three of the prints were usable and all three prints belonged to appellant. Therefore, absent Breanna's pretrial identification, there still exists sufficient evidence that appellant was the intruder who entered into Breanna's home.

**{¶23}** Accordingly, appellant's sole assignment of error lacks merit and is overruled.

**{¶24}** For the reasons stated above, the trial court's judgment is hereby affirmed.


Waite, P. J., concurs.
D'Apolito, J., concurs.

Case No. 18 CO 0017

---

For the reasons stated in the Opinion rendered herein, the sole assignments of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**